**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 26-CV-23664-RAR**

**DAIKEL DUMONT RODRIGUEZ**,

Petitioner,

v.

**MIAMI ICE FIELD OFFICE DIRECTOR**,

Respondent.
_______________________________________/

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

**THIS CAUSE** comes before the Court upon Petitioner Daikel Dumont Rodriguez's Petition for Writ of Habeas Corpus ("Petition"), [ECF No. 1], filed on May 22, 2026. Petitioner alleges that he has been unlawfully committed to detention and seeks that the Court order his immediate release. *See* Pet., Prayer for Relief. The Court having reviewed the Petition,[1] the relevant submissions, and applicable law, it is hereby

**ORDERED AND ADJUDGED** that the Petition is **DENIED** as set forth herein.

**BACKGROUND**

Petitioner is a Cuban national that arrived in the Untitled States in 2010 and became a Lawful Permanent Resident two years later. Pet. ¶¶ 20–21. On May 9, 2012, Petitioner was convicted for cannabis trafficking in Port St. Lucie, Florida and placed into removal proceedings after the completion of his sentence. *Id.* ¶¶ 23–24. On March 6, 2019, and an Immigration Judge ("IJ") ordered Petitioner removed to Cuba—but he was released under an Order of Supervision ("OSUP") shortly after. *Id.* ¶¶ 25–26. Years later, Petitioner moved to reopen his removal order,

[1] On June 1, 2026, Respondent filed a Response to Petitioner's Amended Petition ("Response"), [ECF No. 7]. Petitioner subsequently filed a Reply, [ECF No. 8], on June 7, 2026.

citing an intervening change in law, but an IJ denied his motion on July 29, 2025. Pet. ¶¶ 27–28. He appealed his motion to reopen and moved the Board of Immigration Appeals for a stay of his removal on August 19, 2025, and both his appeal and his motion remain pending to date. *Id.* ¶¶ 29–30.

Petitioner was detained in November 2025. Pet. ¶¶ 4, 31. He was initially placed at Florida Soft Side South Detention Center, during which time he filed an earlier petition in the Middle District of Florida challenging his detention. *Id.* ¶¶ 4–5 (citing *Dumont Rodriguez v. Warden of Alligator Alcatraz*, 26-cv-268 (M.D. Fla. 2026)). However, his previous petition was denied as premature because he had not yet attained six continuous months in custody. *Id*. at 5. Petitioner was transferred to Krome North Service Processing Center and then transferred to the Miami Federal Detention Center due to wildfire danger. *Id.* ¶¶ 4, 31; [ECF No. 10]. Petitioner maintains that he has been detained for over six months and did not receive post-order custody reviews at the 90- and 180-day marks. Compl. ¶¶ 31–32. He filed the instant Petition, [ECF No. 1], on May 22, 2026.

Petitioner argues that his continued detention violates the Fifth Amendment Due Process Clause as interpreted by *Zadvydas v. Davis*, 533 U.S. 678 (2001), because he has been detained for over six months and removal is not likely in the reasonably foreseeable future. *See* Pet. at 10–11. He asks the Court to order his immediate release from custody and enjoin Respondent from re-arresting or re-detaining him absent full and strict compliance with federal law. *See id.* at 14.

**LEGAL STANDARD**

Under 28 U.S.C. § 2241, federal district courts "within their respective jurisdictions" have the authority to hear applications for habeas corpus by any person who claims to be held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. The "essence of habeas corpus is an attack by a person in custody upon the legality of that

custody," and thus to be within the "core of habeas corpus," a petitioner must seek "either immediate release from that confinement or the shortening of its duration." *Prieser v. Rodriguez*, 411 U.S. 475, 484, 489 (1973). Section 2241 authorizes federal courts to hear challenges to immigration detention. *Zadvydas*, 533 U.S. at 687 (noting that "28 U.S.C. § 2241[ ] confers jurisdiction upon the federal courts to hear" challenges to the "lawfulness of immigration-related detention").

**ANALYSIS**

Petitioner maintains that his detention violates his Fifth Amendment substantive due process rights and 8 U.S.C. § 1231(a)(6) because "[h]is removal period has already run, and there is no significant likelihood of removal in the reasonably foreseeable future." *See* Pet. ¶ 47. Petitioner also claims a procedural due process violation, alleging that he was detained without notice or explanation. *Id.* ¶ 52. And Petitioner lastly asserts that Respondent "violate[d] the *Accardi* doctrine, which requires agencies to follow their own binding regulations" because they failed to timely secure his removal and conduct post-order custody reviews as required by federal regulations. *Id.* ¶¶ 56–60 (citing *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954)).[2] The Court addresses each argument in turn.

[2] While the parties do not raise the issue of jurisdiction, "a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking." *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 975 (11th Cir. 2005) (quoting *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999)). While there are certain jurisdiction stripping provisions that may preclude judicial review such as § 1252(g) and § 1252(b)(9), the Court's independent review of the record reveals that none are applicable here. *See, e.g., Gomez-Pena v. Sec'y, Dep't of Homeland Sec.*, No. 3:25-cv-1287-MMH-MCR, 2026 WL 83980, at *2–3 (M.D. Fla. Jan. 12, 2026) (finding that petitioner's claims are not barred by 8 U.S.C. § 1252(g) and 8 U.S.C. § 1252(b)(9) because petitioner is not attacking "ICE's decision to commence removal proceedings, adjudicate his case, or execute an order of removal" nor is he "seeking to challenge the decision to seek removal or the process by which removability will be determined."); *Boffill v. Field Off. Dir.*, No. 25-25179, 2025 WL 3246868, at *2–4 (S.D. Fla. Nov. 20, 2025) (same). Because Petitioner "is not challenging his removal proceedings—he is challenging the antecedent detention," the Petition is squarely within the Court's jurisdiction. *See Hernandez v. Noem*, No. 2:26-CV-515-KCD-NPM, 2026 WL 809576, at *2 (M.D. Fla. Mar. 24, 2026).

## I. Petitioner is lawfully detained pursuant to 8 U.S.C. § 1231 and his detention comports with due process.

Section 1231 provides that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days[.]" 8 U.S.C. § 1231(a)(1)(A). But the removal period "shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." *Id.* § 1231(a)(1)(C).

In *Zadvydas v. Davis*, the Supreme Court held that the post-removal-period detention statute, 8 U.S.C. § 1231, "read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States. It does not permit indefinite detention." 533 U.S. at 689. As this Court has explained, "[t]o avoid reading the statute as violating the Fifth Amendment Due Process Clause and to create uniform standards for evaluating challenges to post-removal-period detention, the Supreme Court held that any detention of six months or less was a 'presumptively reasonable period of detention,' and that 'an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.'" *Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 1895479, at *8 (S.D. Fla. July 8, 2025) (quoting *Zadvydas*, 533 U.S. at 701).

Thus, to state a *Zadvydas* claim, the petitioner must show (1) "post-removal order detention in excess of six months" and (2) "a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002). Here, the parties do not dispute that Petitioner has been in custody for over six months, since November 2025. *See* Pet. ¶ 31; Resp. at 3 (acknowledging that "Petitioner has now been in

custody longer than the six-month period found to be presumptively reasonable under *Zadvydas*[.]").

However, Respondent argues that Petitioner "has prolonged his own detention – and the permissible removal period – by failing to cooperate with the government's effort to remove him." Resp. at 3. And Respondent further asserts that Petitioner has failed to show that he has good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. *Id.* Respondent appears to concede that removal to Cuba is unlikely at this time but points to the fact that Petitioner twice refused to sign Notices of Removal to Mexico—on November 23, 2025 and April 22, 2026—"thus impeding his own removal." *Id.* at 7; *see also* [ECF No. 7-12, 7-13].

Petitioner counters by arguing that "other than issuance of a 'notice' of removal to Mexico, Respondent has not shown any evidence of Mexico's willingness to accept Petitioner other than a bare assertion from a deportation officer that Mexico accepts deportees on a case-by-case basis." Reply at 1. And Petitioner pushes back against the assertion that he failed to comply with Respondent's efforts to remove him to Mexico because "Respondent's evidence does not actually specify what—if anything—he failed to do, much less how, or if, said actions or omissions effectively prevented his removal." *Id.*

Pursuant to 8 U.S.C. § 1231(a)(1)(C), the government may detain an alien beyond the presumptively reasonable removal period if the alien either "fails or refuses to make timely application in good faith for travel or other documents necessary to [his] departure" or "conspires or acts to prevent [his] removal subject to an order of removal." *See* 8 U.S.C. § 1231(a)(1)(C). Indeed, when "'the keys to [the petitioner's] freedom [are] in his pocket and [he] could likely effectuate his removal by providing the information requested,' [] he 'cannot convincingly argue that there is no significant likelihood of removal.'" *Singh v. U.S. Att'y Gen.*, 945 F.3d 1310, 1314

(11th Cir. 2019) (quoting *Pelich v. Immigration & Naturalization Serv.*, 329 F.3d 1057, 1060 (9th Cir. 2003)).

The Eleventh Circuit has consistently held that petitioners who prevent their own removal from the United States may be detained longer than the six-month period contemplated in *Zadvydas*. *See Vaz v. Skinner*, 634 F. App'x 778, 780 (11th Cir. 2015) (denying habeas petition of petitioner who had been detained for three years because "[h]is refusal to voluntarily sign his travel document or inform Brazil that he is willing to return has extended his removal period[.]"); *Oladokun v. U.S. Atty. Gen.*, 479 F. App'x 895, 897 (11th Cir. 2012) (denying habeas petition where petitioner thwarted his removal by refusing to comply with removal procedures and "complete forms necessary for him to obtain a new travel document."). And this Court has similarly determined that the six-month removal period was tolled when "[p]etitioner declined to complete his Jordanian travel document application on two occasions," finding that it did not begin until after he submitted his travel document request. *See Habash v. Warden, Krome Serv. Processing Ctr.*, No. 26-22397-RAR, 2026 WL 1217754, at *4 (S.D. Fla. May 5, 2026).

Here, the Court finds that Petitioner has thwarted his own removal such that his detention may exceed the six-month presumptively reasonable period. Petitioner was served with a Notice of Removal to Mexico on November 23, 2026, shortly after he was detained, which he refused to sign. *See* Resp. at 4; [ECF No. 7-2] ¶ 11; [ECF No. 7-12]. Petitioner again refused to sign a subsequent Notice of Removal to Mexico on April 22, 2026—before being detained for six months and filing the instant petition. *See* Resp. at 4; [ECF No. 7-2] ¶ 13. And on that same day, Petitioner was served with a Notice of Failure to Comply Pursuant to 8 CFR § 241.4(g) ("Notice"), which he also refused to sign. *See* Resp. at 4; [ECF No. 7-13]. This Notice indicated that "[o]n 3/22/2026, you were advised, via form I-229(a) and Instruction Sheet to Detainee, of specific requirements to complete and were given 30 days to comply with your obligation to assist in obtaining a travel

document." [ECF No. 7-13] at 1. It also informed Petitioner that "you will remain in ICE custody until you demonstrate that you are making reasonable efforts to comply with the order of removal" and accordingly "[t]he removal period is therefore extended in your case." *Id.*

"Because [Petitioner] is apparently responsible for stalling his own departure, the presumptively reasonable period for his detention is tolled." *Williams v. Warden, Fla. Soft Side S. Det. Ctr.*, No. 2:26-CV-1525-KCD-KRH, 2026 WL 1529366, at *2 (M.D. Fla. June 1, 2026) (tolling presumptively reasonable period where the petitioner refused to sign "Notice of Removal to Mexico . . . [and] Warning for Failure to Depart and the Instruction Sheet to Detainee Regarding Requirement to Assist in Removal."); *see also Torre v. United States Immigr. & Customs Enf't*, No. 26-25365, 2026 WL 2409164, at *2 (S.D. Fla. Aug. 18, 2026) ("Petitioner's multiple refusals to sign the required Notice of Removal tolls his time of detention for *Zadvydas* purposes.").[3]

In his Reply, Petitioner challenges the timeliness and sufficiency of his Notice of Failure to Comply. *See* Reply at 1–2. Petitioner argues that the Notice was not timely issued, as it must be issued "*before* the expiration of the . . . removal period," which he contends began when he was initially ordered removed in 2019. *Id.* at 2, 3. Petitioner also claims that "the purported notice does not even identify the action that Petitioner (allegedly) failed to take" because it reads "As you

[3] The Court notes that Petitioner filed a Notice of Supplemental Authority on August 31, 2026, [ECF No. 12], citing *Gonzalez Triana v. Miami ICE Field Office Dir.*, in which another court within this District held that "Respondents fail to explain what impact, if any, Petitioner's alleged failure to sign the Notice of Removal has on his removal to Mexico, and thus, the Court will not find that Petitioner's alleged failure to sign was an attempt to thwart his removal." No. 26-25177, ECF No. 8 at 6 (S.D. Fla. Aug. 14, 2026). The Court recognizes that, in some instances, the government's assertion that a petitioner thwarted his removal without supporting evidence will be insufficient to toll the removal period. *See Martinez v. Warden, Fla. Baker Corr. Inst.,* No. 3:26-CV-1363-JEP-SJH, 2026 WL 1858268, at *3 (M.D. Fla. June 29, 2026) (finding that "the Federal Respondents have not shown that Petitioner's failure to sign [the notice of removal]" was sufficient to toll the removal period because respondents "fail to provide any support for their statement that Petitioner's signature on these forms is 'required' for Petitioner's removal." (cleaned up)). However, the situation in the instant case is distinguishable because Respondent's Notice of Failure to Comply details that Petitioner failed to comply with specific requirements within thirty days to assist in his removal. *See* [ECF No. 7-13].

have failed to XXXXX, you have failed to comply with your obligation and are acting to prevent your removal from the United States." *Id.* at 2 (quoting [ECF No. 7-13]). However, these arguments do not change the result.

Under 8 C.F.R. § 241.4(g), the removal period may be extended "if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." 8 C.F.R. § 241.4(g)(1)(ii). This is accomplished by providing the "alien with a Notice of Failure to Comply, as provided in paragraph (g)(5) of this section, before the expiration of the removal period." *Id.*

Here, the removal period began when Petitioner was detained in November 2025—not when he was initially ordered removed in 2019—and thus his Notice was timely issued. The six-month removal period begins when an alien is detained pending removal. *See United States v. Oliveros*, 275 F.3d 1299, 1308 n.6 (11th Cir. 2001) (explaining that pursuant to *Zadvydas* "the period for which such an alien *can be held* is subject to reasonable limitations, and the presumptive limit is six months") (emphasis added). And even if Petitioner was detained for some time in 2019 before being released on an OSUP and detained again, the Court will not aggregate Petitioner's detention periods from years apart. *See Habash*, 2026 WL 1217754, at *3–4 (determining that "because Petitioner is not permitted to count his prior detention and current detention in the aggregate, he has only been in custody for approximately five months, since November 19, 2025."). Nor is the Court persuaded by Petitioner's argument that the Notice of Failure to Comply did not identify the action Petitioner failed to take. While it is unclear why it includes the apparent placeholder of "XXXXX", it explains elsewhere that Petitioner was issued an "Instruction Sheet to Detainee, of specific requirements to complete and . . . given 30 days to comply." [ECF No. 7-

13] at 1. The Notice came exactly 30 days later, indicating that it was provided in response to Petitioner's failure to timely complete the requirements on the Instruction Sheet.

Accordingly, Petitioner's removal period was tolled due to his failure to comply with efforts to remove him to Mexico. As such, the Court need not reach the second prong of the *Zadvydas* analysis—whether removal is reasonably foreseeable. However, if Petitioner complies with removal efforts and his detention continues, he remains free to file a new petition seeking relief under *Zadvydas* demonstrating that his continued detention exceeds six months and that there is no significant likelihood of removal in the reasonably foreseeable future. *See Akinwale*, 287 F.3d at 1050 ("Because circumstances may ultimately change in Akinwale's situation, we affirm the dismissal without prejudicing Akinwale's ability to file a new § 2241 petition.").

**II. Petitioner's procedural due process and *Accardi* claims also fail.**

In addition to renewing his *Zadvydas* claim upon surpassing six consecutive months in detention, Petitioner revives several arguments that he also raised in his previous petition. First, Petitioner claims a violation of procedural due process because "ICE detained him without prior notice, without alleging any violation, without providing a written explanation, and without affording [him] an opportunity to contest the revocation," and "[h]e has also not received timely post-order custody reviews[.]" *See* Pet. ¶ 52. Second, Petitioner claims that Respondent violated the *Accardi* doctrine by failing to follow its own binding regulations—namely its regulatory obligations to "secure the noncitizen's removal during a 90-day removal period . . . [,] conduct a post-order custody review before the 90-day removal period expires if the noncitizen's removal cannot be accomplished . . . [and] conduct a subsequent 180-day review." *Id.* ¶¶ 57–58.

As Judge Dudek pointed out in his order denying Petitioner's earlier petition, "it's not entirely clear that Rodriguez is entitled to a freestanding due process analysis at this time" because "'the *Zadvydas* standard *is* due process: a § 1231 detainee who fails the *Zadvydas* test fails to prove

a due process violation.'" *Rodriguez v. Warden of Alligator Alcatraz*, No. 2:26-CV-268-KCD-NPM, 2026 WL 860567, at *3 (M.D. Fla. Mar. 30, 2026) (quoting *Castaneda v. Perry*, 95 F.4th 750, 760 (4th Cir. 2024)). But even if a freestanding due process analysis was warranted, Petitioner's challenge nevertheless lacks merit. Petitioner is "a noncitizen subject to a final, unexecuted order of removal," even though he was previously released on an OSUP in 2019. *Tran v. Warden, Fla. Soft Side S. Det. Ctr.*, No. 2:25-CV-1224-KCD-NPM, 2026 WL 672969, at *6 (M.D. Fla. Mar. 10, 2026). In November 2025, Respondent determined that it was time to carry out his removal, and they provided Petitioner the proper procedural protections in doing so—by giving him a Notice of Revocation of Release, an informal interview regarding the reasons for the revocation, and an opportunity to respond. *See id.*; *see also* [ECF No 7-2] ¶ 11.

Further, under the *Accardi* doctrine, "agency deviation from its own regulations and procedures may justify judicial relief in a case otherwise properly before the court." *Jean v. Nelson*, 727 F.2d 957, 976 (11th Cir. 1984), *aff'd*, 472 U.S. 846 (1985) (quotation omitted). Here, it does not appear that Respondent deviated from its own regulations. Petitioner bases his *Accardi* challenge on the fact that he was detained for longer than the removal period and failed to receive post-order custody reviews at the 90- and 180-day marks. *See* Pet. ¶¶ 57–58. But as previously noted, Petitioner's detention has not exceeded the removal period because his failure to comply with removal efforts has tolled the clock. *See infra* at 7–9.

But even if Petitioner could show that Respondent deviated from its own regulations, "the Court would not grant the extraordinary remedy [Petitioner] seeks: outright release from custody." *Bonachea v. Noem, et al.,* No. 2:26-CV-653-KCD-NPM, 2026 WL 1096846, at *5 (M.D. Fla. Apr. 23, 2026); *Acosta Gonzalez v. Noem*, No. 26-60781, 2026 WL 1077836, *4 (S.D. Fla. Apr. 20, 2026) (rejecting *Accardi* claim because the Supreme Court has held that "if sufficient ground for [Petitioner's] detention by the government is shown, he is not to be discharged for defects in the

original arrest or commitment." (quoting *Nishimura Ekiu v. United States*, 142 U.S. 651, 662 (1892)).

**CONCLUSION**

Based on the foregoing, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Petitioner Daikel Dumont Rodriguez's Petition for Writ of Habeas Corpus, [ECF No. 1], is **DENIED**.

2. All deadlines are **TERMINATED**, and any pending motions are **DENIED**.

3. The Clerk shall **CLOSE** this case.

**DONE AND ORDERED** in Miami, Florida, this 31st day of August, 2026.

**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**